# 254 NEW JERSEY MISCELLANEOUS REPORTS.

CORNELIA C. HILL ET AL., PROSECUTORS, v. THE BOR-
OUGH OF BELMAR, RESPONDENTS.

Argued October 7, 1924—Decided February 26, 1925.

Municipal Improvements—Swimming Pool—Ordinance Provided
for Its Erection on Land Dedicated to be Held by Munici-
pality Free, Open and Unincumbered by Buildings—Pro-
posed Use Adverse to Dedication—Proposed Expenditure
Would be Outside Debt Limit—Abutting Owners, Deriving
Their Title Through Common Grantor, Entitled to Enforce
Restriction—Certiorari a Proper Proceeding in Such Case.

On *certiorari.*

Before Justices KALISCH, BLACK and CAMPBELL.

For the prosecutors, *Harry R. Cooper.*

For the respondent, *Joseph Silverstein.*

PER CURIAM.

The writ of *certiorari* brings before us for review an ordi-
nance entitled, "An ordinance providing for the construction
of a swimming pool in the borough of Belmar, and appro-
priating the money necessary for the work.

Prosecutors have filed nine specific and one general reason
why the ordinance should be set aside. These are argued
under six points or grounds.

The first, second and fourth may be considered together.
They are:

1. The borough of Belmar has no right to spend public
moneys for improving property to which it has no title.

2. Such title as the borough of Belmar has to the premises
in question is held as trustee for the public, the trust being
that the property shall remain forever free, open and un-
encumbered of any buildings whatsoever.

4. The borough is estopped from improving the property
as contemplated.

The ordinance, by both its preamble and first section, fixes the location of the proposed swimming pool.

The preamble being as follows: "Whereas, in the judgment of the mayor and council, it is deemed desirable, for the purpose of furnishing appropriate recreation and entertainment for the property owners and visitors in the borough of Belmar, to construct a swimming pool on the west side of Ocean avenue, between Fifth and Sixth avenues, in the borough of Belmar."

Section 1 is as follows: "That there shall be constructed a swimming pool on the west side of Ocean avenue, between Fifth and Sixth avenues, in the borough of Belmar."

The Ocean Beach Association, in 1873, became the owner of a tract of land, including the tract described in the ordinance as the location of the proposed pool. The property was laid out in lots and streets and avenues, and a map thereof filed in the county clerk's office. Silver lake, as it then existed, was connected with the ocean by a small stream. In 1882 the directors of the Ocean Beach Association passed a resolution "that the finish at the east end of the lake be a square, three hundred feet on Ocean avenue by two hundred feet west, and that it be so finished at the earliest convenience, and so entitled on our map."

In 1883 a new map was made and filed, showing the property in question, at the head of Silver lake, laid out in a square. Practically all the conveyances in Belmar were made with reference to one or the other of these maps. In making sales of lots it was represented that this "square" would remain open.

Subsequent to 1883 the Ocean Beach Association divided this "square" into lots or plots, and conveyed one lot to each of its stockholders. Some of them erected buildings thereon.

In 1905 the borough of Belmar instituted three ejectment suits in the Supreme Court against three of the persons to whom lots in the "square" had been conveyed. Judgment in each suit was entered in favor of the borough upon *relicta*.

*Belmar* v. *Barnett,* 77 *N. J. L.* 559, in the Court of Errors and Appeals, arose out of an action of ejectment respecting a parcel of land embraced within the premises with which we are now concerned. Therein, in reciting the facts, Mr. Justice Bergen, writing the opinion of the court, said: "There was evidence at what appears to have been the first public sale made in 1875 or 1876, the auctioneer, by direction of the president of the association, who was present, announced to the prospective purchasers that the square of land lying between the lake and the ocean would never be sold, but kept and used as a public park, so that the owner of the lots on each side of the lake would always have an unobstructed view of the ocean, and there was also other testimony from which it might be properly inferred that this square or block of land was dedicated by the owners for public use as a park."

In the same case the court further says: "Assuming, as we must, that a jury might find that the Ocean Beach Association had dedicated land, to which the *locus in quo* is a part, to public use as a park for the benefit of all the lot owners, all that remained to be determined was whether the plaintiff was entitled to possession of the land when the action was commenced."

The result of these suits and the testimony before us show conclusively that there was a dedication of the tract in question as and for a public park, and that the purchaser of lots purchased upon such representation, and that the plot would be kept open, insuring an unobstructed view of the ocean.

Under such circumstances the right of possession vests in the municipality, which holds a sort of secondary title in trust for the purposes of the dedication, while the bare legal title remains in the dedicator in trust for the use expressly or impliedly declared in the dedication. *Fessler* v. *Town of Union,* 67 *N. J. Eq.* 14; *Jersey City* v. *Morris Canal,* 12 *Id.* 547; *Bayonne* v. *Ford,* 43 *N. J. L.* 296; *Methodist Church* v. *Hoboken,* 19 *N. J. Eq.* 355; *Price* v. *Plainfield,* 40 *N. J. L.* 608.

We are of the opinion that the use to which it is proposed to put this land is a use other and adverse to the purposes of the dedication. A park or public square cannot be said

to be the same as a public swimming pool. Much testimony was devoted by respondent in the attempt to show that the construction of the proposed pool and its appurtenances would not materially obstruct a view of the ocean nor exclude the public, but the fact remains that such use is not reconcilable with the use of a park or public square.

We conclude, therefore, that such proposed use is unauthorized and *ultra vires,* and for that reason the ordinance must be set aside.

We might well rest here, but there are urged other matters of some importance which we think should be settled.

The third point raised and urged by the prosecutors is: The expenditure of an amount estimated from $84,000 to $100,000 for the purpose of erecting a swimming pool will exceed the debt limit.

We think an indebtedness for this purpose is excluded from the debt limit of the borough under *Pamph. L.* 1920, *p.* 235, *ch.* 108.

The fifth and sixth points are:

5. The prosecutors, being abutting owners of land bounding on the public park sought to be improved, suffer a peculiar injury.

6. The prosecutors in this case each derive their title through a common grantor, and are therefore entitled to enforce the restriction.

Respondent contends that these reasons may not be properly urged in proceedings in *certiorari.*

But in *Ocean City Land Co.* v. *Ocean City,* 73 *N. J. L.* 493; *affirmed,* 75 *Id.* 942, it was held, "an ordinance of a municipality * * * relative to the vacation of land dedicated or devoted to public use which contains terms that can only be made effective by infringing upon private rights, will be set aside."

While in language, the ordinance before us does not purport to vacate the park, yet its effect, as before pointed out, is to devote the tract to such a radically different use from that for which it was dedicated, that it, in fact, amounts to a vacation of the tract as a park or public square.

The ordinance is set aside, with costs.