115 N.J. Super. 457 (1971)
280 A.2d 210
STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF - RESPONDENT,
v.
HAZEL R. BIRCH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1971.
Decided July 22, 1971.
*459 Before Judges SULLIVAN, COLLESTER and LABRECQUE.
Mr. Theodore W. Geiser argued the cause for appellant (Messrs. Hughes, McElroy, Connell, Foley & Geiser, attorneys).
*460 Mr. Richard L. Rudin, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel; Mr. Rudin, on the brief).
The opinion of the court was delivered by LABREBQUE, J.A.D.
In this condemnation case defendant Hazel R. Birch appeals from a verdict in the sum of $22,000 for a portion of her land taken by the State in connection with the construction of the Route 35 freeway (the freeway) and damage to the remainder.
Mrs. Birch was the owner of a tract of land which lay athwart the proposed right-of-way of the freeway. The actual taking involved approximately three acres. However, the effect of the taking was to cut her property in two, leaving approximately 4 acres to the east of the right-of-way and 15 acres to the west. Her home and outbuildings were located on the westerly 15 acres, and prior to the taking access thereto was via Bentz Road, a sand and gravel road maintained by the Township of Wall, which ran in an easterly direction to New Bedford Road. Bentz Road comprised the easterly end of a dedicated street which extended through various properties from the New Bedford Road west to the Bailey's Corner Road, but the part to the west beyond defendant's home was no more than a "paper" street and appears never to have been opened or worked by either the township or the adjoining owners. The distance from defendant's house to the Bailey's Corner Road over the route of the paper street was approximately 1,700 feet, of which 960 feet was through the property of others. The route was impassible for any sort of vehicle at the time of the taking.
The case produced the usual disagreement between the admittedly qualified experts as to the damage sustained by defendant. Her witness, Lazarus, was of the opinion that the land actually taken was worth $2,000 per acre and *461 that the damage to the remainder was $35,000 based upon his value of the westerly 15 acres before the taking of $41,000 and his value after of $6,000. Gall, the State's expert, estimated the value of the land taken to be $7,640 and the damage to the remainder to be $6,860, a total of $14,500. As noted, the jury awarded $22,000.[1]
The wide divergence between the opinions of the experts was occasioned by their inability to agree upon the cost of curing the resultant landlocked condition of defendant's westerly 15 acres. The State's expert, while not disputing its landlocked character, averred that this could be relieved by the construction of a 20-foot wide gravel road leading to the Bailey's Corner Road and that such a road could be built for $6,860. He appears to have assumed that it would be maintained by the township. Defendant countered that the construction of such a road would be subject to a number of contingencies, including, in addition to the cost of construction, whether she would have the right to construct such a road, whether her right of access to Bailey's Corner Road over the paper street would survive a vacation by the township, and whether the township would maintain it (as it had been maintaining the easterly end of Bentz Road for some 20 years). Ancillary to resolution of the cited questions was whether the land subdivision ordinance of the township governed the size and type of the road proposed to be constructed, and, if not, whether the township could require defendant, as a prerequisite to its taking over and assuming the maintenance of the new road, to comply with the street standards set forth in the subdivision ordinance. There was testimony that at the time the original taking was determined upon, the State had contemplated building the access road itself, but upon being confronted with a demand by the township authorities that it be constructed in conformity with the street standards set out in the subdivision ordinance, *462 it elected not to do so but to leave the issue of the building of the road to the owner.
The appeal presents a single, key issue: whether it was prejudicial error to instruct the jury, both during the trial and in the charge, that the land subdivision ordinance was not applicable to the case and played no part therein, and that Mrs. Birch did not have to comply with the ordinance in building the access road. In the charge the jury was instructed, in substance if not expressly, that if defendant's expert based "his after value upon the expense to which Mrs. Birch would be put to comply with the land subdivision ordinance," there was no basis for that portion of his testimony. Defendant contends that this had the effect of emasculating the testimony of her expert, and led to the allegedly inadequate verdict returned by the jury.
From our consideration of the proofs in the light of the issues involved, we are inclined to agree that the challenged instruction was error, and that the interest of justice call for a new trial.
Defendant was entitled to just compensation. N.J. Const. (1947), Art. I, par. 1. In general, had the whole of her lands been taken, her damages would have amounted to the fair market value of the property as of the date of the taking, determined by what would be agreeable between a willing seller and a willing buyer, neither being under any compulsion. State v. Speare, 86 N.J. Super. 565, 572 (App. Div. 1965), certif. den. 45 N.J. 589 (1965). Where, as here, there was only a partial taking, the measure of damages was the difference between the fair market value, as above defined, of the whole property before the taking and the fair market value of the remainder after the taking. Port of N.Y. Authority v. Howell, 59 N.J. Super. 343, 348 (Law Div. 1960), aff'd 68 N.J. Super. 559 (App. Div. 1961), certif. den. 36 N.J. 144 (1961). The proximate effect of the taking was also to be taken into consideration in ascertaining the value of the remaining land. Ridgewood v. Sreel Investment Corp., 28 N.J. 121 (1958); State v. Speere, supra, 86 N.J. *463 Super. at 573. Since the denial of access to the freeway resulted in the greater part of defendant's property being landlocked, the cost of ameliorating or curing that condition was an important factor to be considered in arriving at its fair market value. Any significant restriction on the jury's consideration of the proofs on that issue, if found to be erroneous, would go to the very heart of the matter it was impanelled to decide.
The State urges that since the court was dealing with a dedicated street, and the two remaining parts of defendant's land had been severed by court order (condemnation), the court properly charged that the subdivision ordinance did not apply and that Mrs. Birch did not have to comply with it in building the proposed access road. It further argues that as a lot owner adjoining the dedicated way, she would always retain a right of access over it to Bailey's Corner Road by reason of the dedication. Wholly aside from the possibly nonbinding effect of the court's pronouncement upon the Township of Wall (which did not participate in the litigation), the difficulty with the State's position is that the township had already determined administratively to compel compliance with most of the street standards set forth in the subdivision ordinance. Of even more importance, the proofs were silent as to the nature and extent of the dedication of what came to be known as Bentz Road.
The dedication of private lands to public use is essentially a matter of intent. Haven Homes v. Raritan Tp., 19 N.J. 239, 246 (1955). Although acceptance of a dedication is a necessary prerequisite to imposing responsibility upon a municipality and vesting any present right of use in the public, the dedication is nevertheless complete, so far as the landowner is concerned, when he has manifested an intent to devote the land to public use. Velasco v. Goldman Builders, Inc., 93 N.J. Super. 123, 134 (App. Div. 1966). Notwithstanding nonacceptance, the power of acceptance remains with the public authorities until such time as they reject or vacate the dedicated land by official municipal legislative *464 action. See N.J.S.A. 40:67-19; Highway Holding Co. v. Yara Engineering Corp., 22 N.J. 119, 126 (1956); Cunningham and Tischler, "Dedication of Land in New Jersey," 15 Rutgers L. Rev. 377 (1961).
In certain instances, a dedication also gives rise to private rights. When a developer plots a tract of land into building lots and prepares a map disclosing streets abutting such lots, if he conveys by reference to the map and the purchaser relies thereon, an intention to dedicate such streets may be assumed. Long Branch v. Toovey, 104 N.J.L. 335, 337 (E. & A. 1927); Cunningham and Tischler, supra, at 386-388. In such case, even in the absence of an acceptance by the municipal authorities or in case of a vacation, the individual purchaser of a building lot abutting one of such streets in a development retains a private easement to the extent of a perpetual and indefeasible right of access to his lot over the dedicated street. At the least this amounts to a right of passage from his lot to the next adjoining public street on each side. Velasco v. Goldman Builders, Inc., supra, 93 N.J. Super., at 139; Highway Holding Co. v. Yara Engineering Corp., supra, 22 N.J. at 126-128, 134.
While generally an offer of dedication is irrevocable, the actual dedication to public use is consummated when the dedication is accepted by an appropriate ordinance or resolution of the municipality. See N.J.S.A. 40:67-1(b); Velasco v. Goldman Builders, Inc., supra, 93 N.J. Super. at 137. Acceptance may also be effectuated by other official conduct which manifests an intention to treat the land in question as dedicated to public use. Id.; Cunningham and Tischler, supra, 15 Rutgers L. Rev., at 398. Here the trial judge found, and properly so, that there had been an acceptance of the portion of Bentz Road running easterly from defendant's house, through its improvement and maintenance by the Township of Wall, but that the unopened portion running westerly still remained a paper street. See George Van Tassel's, etc., Inc. v. Bloomfield, 8 N.J. Super. 524, *465 530 (Ch. Div. 1950); cf. Sarty v. Millburn Tp., 28 N.J. Super. 199, 205-206 (App. Div. 1953).
As noted, the test to be applied in arriving at the amount of damages flowing from the taking is based upon fair market value. The nature of the dedication here involved, as bearing upon the rights of the owner, vis a vis adjoining owners in the event of a vacation, would appear to be of the utmost importance to a prospective willing purchaser not required to buy in fixing the fair market price to be paid. Of even greater importance would be the distance necessary to be travelled in order to provide a new access to Bailey's Corner Road, the expense involved in constructing the new road, and whether the obligation of maintaining it was to devolve upon the owner or upon the municipality. Here it is clear that in order to reach Bailey's Corner Road over the course of the paper street defendant will be required to traverse 1,700 feet, of which 960 feet would be over land not her own. In the absence of proof in the record to establish the specifics of the dedication it is impossible to determine her rights in the event the municipality should in the future determine, for good and sufficient reasons, upon vacation of the dedication of the unaccepted portion of Bentz Road. N.J.S.A. 40:67-19. In the absence of proof to such effect we may assume that defendant's plot was not sold by reference to a map on which Bentz Road was delineated as a street.
Here, the expense of construction of the road and the owner's obligation as to its future maintenance depended, not so much upon whether the severance came within the ambit of the township's land subdivision ordinance, but whether the owner, as a prerequisite to acceptance of the road and its maintenance thereafter by the township, would be required to construct it in conformity with certain standards set forth in that ordinance. Clearly, the township would have the right to refuse to accept the dedication and assume the maintenance of the road unless it met certain reasonable standards. Cf. Kligman v. Lautman, 98 N.J. Super. 344 (App. Div. 1967), aff'd 53 N.J. 517 (1969). It *466 was not limited by the fact that the east end of Bentz Road, which it had been maintaining for some 20 years, did not comply with such standards.
It is clear from undisputed testimony on both sides that the township was insisting (with certain exceptions not here relevant) upon the standards set forth in the subdivision ordinance. Without passing upon their reasonableness, we are convinced that the instruction that the ordinance played no part in the case and that Mrs. Birch did not have to comply with its provisions was erroneous. When considered in the light of the testimony of Gall, the State's expert, it had a tendency to mislead the jury into believing that the township was agreeable to assuming the maintenance of a 1,700-foot access road to Bailey's Corner Road, even though it were to be constructed of but six inches of gravel to a width of only 20 feet and to be without curbs, drainage, sewer or water mains. Such was not the case.
For the foregoing reasons the judgment is reversed and the matter remanded for a new trial.
Since the case must be retried, we call attention to certain admonitions to the jury by counsel for the State to the effect that "this is going to be a landmark case * * *. Your determination of the questions that come out here during the course of this trial will largely determine how much the State Treasury will have to pay in similar situations." "There is a very important issue involved here, because this situation is going to arise again. Apparently it hasn't arisen before. The State is going to be faced with similar situations. How much is the State going to have to pay in the future for situations like this? We know where the money is coming from." Such admonitions had no place in the case and should not be repeated.
The usual costs, but not counsel fees or expert fees, to defendant.
NOTES
[1] We are advised that the condemnation commission had awarded $48,900.