224 N.J. Super. 182 (1988)
539 A.2d 1271
KENNETH H. ENGLANDER AND JOHN KAZANJIAN, PLAINTIFFS-RESPONDENTS,
v.
TOWNSHIP OF WEST ORANGE, DEFENDANT-RESPONDENT, AND CUSTODIO SANTOS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 29, 1988.
Decided April 5, 1988.
*184 Before Judges PETRELLA and BAIME.
David D. Bond argued the cause for appellant (David D. Bond on the brief).
William L. Handler argued the cause for respondents Kenneth Englander and John Kazanjian (George R. and William L. Handler, attorneys; William L. Handler on the letter brief).
Michael E. Panagos argued the cause for respondent Township of West Orange (Joseph G. Dooley, attorney; Michael E. Panagos on the letter brief).
PER CURIAM.
The Chancery Division Judge summarily determined that defendant Custodio Santos should be prohibited from building on Lot 38, Block 80A (which he purchased from defendant Township of West Orange) because building on the under-sized lot would violate a neighborhood scheme as defined in Blaine v. Ritger, 211 N.J. Super. 644 (App.Div. 1986).
Plaintiffs Kenneth H. Englander and John Kazanjian are owners of property contiguous to Lot 38 which has a frontage of 50 feet and an area of 6,000 square feet. As discussed hereinafter, this lot came to be shown on a 1927 filed map as a street, and it was thereafter deeded to the Township of West Orange in 1932 for that purpose. Recorded restrictions on the property required that the lot have at least 75 foot frontage for any building to be erected. We are advised that the property is located in an R-5 residence zone. According to the township *185 zoning ordinance in that zone a 75 foot frontage and 10,000 square foot minimum lot size is required for a dwelling to be erected.
Santos appeals arguing that: (1) the Chancery Division judge did not have authority to enter judgment for the plaintiff; (2) the judge's decision was not based upon pleadings and affidavits of record; (3) the judge erred in finding that a neighborhood scheme existed which included a frontage restriction, and (4) even if a neighborhood scheme was intended, it does not meet the requirements of Blaine v. Ritger. At oral argument we pointed out that there appeared to have been a dedicated street involved and invited and received supplemental briefs regarding certain statutory provisions. Plaintiffs' verified complaint had raised the issue of the effect of a vacation of a paper street and the effect on claimed public easements.
It is undisputed that on October 25, 1927 West Orange approved the filing of a plat dated October 8, 1927 entitled "Map of Hutton Park West" (Hutton Park) by S.G. Supplee & Sons Company (Supplee) as owners of a tract that was to be subdivided into 31 lots (according to the plat) with frontage varying from 75 to 125 feet. This plat showed various streets including Lot 38, labeled "Jackson Place." The map was filed with the Register of Essex County on May 24, 1928.
The record discloses that on November 1, 1927 Supplee entered into an agreement with West Orange in which it approved the October 8, 1927 map and accepted "the dedication of the streets shown thereon." West Orange also agreed to improve the streets after Supplee agreed to place certain restrictions on the Hutton Park tract. Those restrictions included that the tract would not be subdivided into lots with less than 75 foot frontages; that the lots would not be used for any purpose other than one-family homes, and that houses would not be erected on any lot, other than angular and corner lots, with less than 75 foot frontage. Other restrictions dealt with required floor space, set back, minimum cost, roof, garage and *186 clothes poles requirements. These restrictions were to run with the land. During the following two years various lots were sold by Supplee. None of the deeds specifically included frontage requirements. Some, but not all, of the deeds included reference to the restrictions in the agreement between Supplee and West Orange.
On December 19, 1927 Supplee conveyed title to Lot 38 to Ruth L. Ross, subject to the restriction that nothing would be built on the lot unless additional frontage was acquired sufficient to conform to the 75 foot requirement referred to in the agreement between Supplee and West Orange. On August 6, 1932 Ross and her husband conveyed title to Lot 38 to West Orange. The deed stated that it was "for the purpose of dedicating the same as a public street." It also stated that it was subject to restrictions of record. For the past 50 some years Lot 38 has remained as a paper street and has been partially used as a driveway by the owners of the adjacent Englander's property (Lot 39, Block 80A).
The verified complaint and affidavits submitted by plaintiffs recited that during mid-1984 Kazanjian, owner of the adjacent lot on the other side of Lot 38 (Lot 37, Block 80A), was notified by West Orange that the municipality was interested in selling Lot 38. A West Orange official indicated that Englander and Kazanjian would receive an equal half of Lot 38 for $2,000 each. Although West Orange was not prepared to sell the lot at that time, a Township official told plaintiffs that they would be notified about the sale.
The West Orange Township Council passed a resolution on October 15, 1985 authorizing the sale of Lot 38. Shortly thereafter a notice was published in the West Orange Chronicle, a local newspaper, stating that Lot 38 in Block 80A was to be subdivided and either sold to two adjacent property owners with a deed restriction against future subdivision or sold as a "buildable" lot. No personal notice of the sale was given to either adjoining property owner.
*187 On November 4, 1985 Santos purchased Lot 38 at a public auction for $12,100. According to Santos' certification, only one additional party bid on the property. Plaintiffs were not specifically notified by the Township of the auction and did not have actual knowledge of the published notice. They were not present at the auction and did not bid on the property. Santos intended to build a home on the property and asserted that a Township official assured him that the lot could be built upon, allegedly based on the usual type ordinance provision relating to the existence of what would be preexisting nonconforming lots in a residential zone not owned by an adjoining property owner.[1] However, Santos could not obtain title insurance. The record does not disclose the reason for this.
On November 19, 1985 the township adopted a resolution accepting Santos as the purchaser of Lot 38. Over a year later, according to an affidavit, Englander observed a surveyor hired by Santos surveying Lot 38, and on inquiring he learned from the Township that the property had been purchased by Santos at auction the previous year, and that Santos was the only bidder.[2]
Plaintiffs filed a verified complaint and obtained an order to show cause in the Chancery Division seeking to prevent Santos from physically altering Lot 38. They also sought a judicial determination that they were owners of the property in dispute; that Englander was owner of the property by adverse possession, or alternatively, that the sale to Santos was void and that another sale should be ordered.
*188 As noted, the Chancery Judge prohibited Santos from building on Lot 38 under the neighborhood scheme theory and found that the restrictions requiring 75 foot frontage applied to the lot. The judge also dismissed plaintiffs' claim against West Orange and Santos' cross-claim against West Orange.
At the January 30, 1987 hearing the Chancery Judge rejected plaintiffs' claims to any rights to challenge the sale of Lot 38 as a vacated dedicated street because "West Orange never accepted the street, so it's never been dedicated." The judge instead sua sponte raised the neighborhood scheme issue as the basis for relief to plaintiffs in their challenge to West Orange's actions.
In rejecting plaintiffs' claims based on dedication and dismissing the claims against West Orange, the judge below erred. Dedication and acceptance are separate and distinct matters. Although dedication of a street may be formally accepted by an appropriate municipal ordinance or resolution, see N.J.S.A. 40:67-1(b), dedication may also be accomplished by other "official conduct which manifests an intent to treat the land in question as dedicated to the public use." State v. Birch, 115 N.J. Super. 457, 464 (App.Div. 1971). The acceptance of a deed by the township may constitute such conduct. Moreover, a dedication once made may be accepted by the municipality at any time until it formally rejects or vacates the dedicated property by official municipal action. Highway Holding Co. v. Yara Engineering Corp., 22 N.J. 119, 126 (1956); State v. Birch, supra, 115 N.J. Super. at 464; see N.J.S.A. 40:67-19, which reads:
Whenever there shall have been a dedication of lands as a public street or highway or a public square or public place, and the same has not been accepted or opened by the municipality, and it shall appear to the governing body that the public interest will be better served by releasing those lands or any part thereof from such dedication, the governing body may by ordinance release and extinguish the public right arising from said dedication as to the whole or any part of those lands, and thereupon said lands or the part thereof so released shall be effectually discharged therefrom as though the dedication had not taken place; but only after notice of the intention of the governing body to *189 consider any such ordinance, and a hearing thereon, shall have been given as provided in section 40:49-6 of this title concerning ordinances for the vacation of streets.
Thus municipal action under N.J.S.A. 40:67-19 is only effective after notice and a hearing is provided. See N.J.S.A. 40:49-6 (notice required for vacation of street); N.J.S.A. 40A:12-13 (procedures on sale of real property), and 40A:12-13.2 (requirements for sale of undersized vacant land).
The approval of the agreement and the map in 1927 and its filing in 1928 constituted a dedication.[3] The more recent dedication occurred in 1932. Lot 38 had been expressly conveyed to West Orange by Ruth Ross and her husband by deed dated August 6, 1932, and thereby expressly dedicated for purposes of a public street. Although here the municipality accepted a deed with the stipulation that the lot was dedicated as a street, the fact that the land has never been formally accepted (by enactment of an ordinance) as a street by the municipality, is inconsequential because such dedication is irrevocable except by proper official municipal action.[4]Highway Holding Co., supra, 22 N.J. at 126; Velasco v. Goldman Builders, Inc., 93 N.J. Super. 123, 134 (App.Div. 1966). West Orange never adopted an ordinance to vacate the dedicated street.
Usually when the dedicator had no intent to transfer a fee simple estate, the abutting owners on a dedicated street which has been vacated acquire an easement over the vacated *190 property only to ensure access to public roads unless such roads are otherwise accessible. Highway Holding Co., supra, 22 N.J. at 134-135; Velasco v. Goldman Builders, Inc., supra, 93 N.J. Super. at 139. Here, however, the municipality has an estate in fee simple absolute. Thus it could sell the vacated land pursuant to N.J.S.A. 40A:12-13. See 6A Powell on Real Property, § 726[3] at 84-109 to 84-110 (1987); 11 McQuillin, Municipal Corporations, § 33.68 at 807-810 (3d ed. 1983). Cunningham and Tischler, "Dedication of Land in New Jersey," 15 Rutgers L.Rev. 377, 399-400 (1961).
Most significantly in the context of this case, N.J.S.A. 40A:12-13.2 requires that whenever a municipality intends to sell property which is less than the minimum size required for development under the municipal zoning ordinance, and the property contains no capital improvements, it must accord contiguous owners of the land the right to prior refusal to purchase the property.[5]
The Chancery Judge merely prohibited Santos from building on Lot 38. He did not deal with whether N.J.S.A. 40:67-19 and N.J.S.A. 40A:12-13.2 applied or were violated. We conclude that these statutes apply and were violated. Our determination obviates the need for us to pass on the issue of neighborhood scheme. We do note that, but for the dedication and the applicable statutes cited above, the record, although somewhat sparse, supports the judge's determination of a neighborhood scheme. Nevertheless, it is clear that West Orange did not comply with N.J.S.A. 40:67-19 and thus improperly sold Lot 38 to Santos. This requires the sale to be set aside as void and ultra vires.
*191 In view of our determination we need not address Santos' arguments that the Chancery Judge improperly disposed of the case in summary fashion and relied on matters not in the record.[6] Moreover, we need not consider these points since they were not raised below and were not ruled upon by the trial court. See Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973).
The order of the trial court is reversed. The deed from the Township of West Orange to Santos is hereby set aside for the reasons set forth herein. We direct the return to Santos of any consideration paid. Any future sale of the subject property shall be in accordance with the applicable statutes referred to herein. No costs.
NOTES
[1] This ordinance provision does not cover the situation here of a dedicated street and cannot override statutory requirements for vacation of such dedicated streets. See, e.g., N.J.S.A. 40:67-19 and N.J.S.A. 40A:12-13.2.
[2] The affidavits and certifications are inconsistent. As noted previously, Santos said in his certification that there was another bidder. The complaint alleged that plaintiffs were told at a township council meeting that a mistake had been made, but that it was too late to do anything about it.
[3] Supplee is presumed to have intended to dedicate Lot 38, labeled "Jackson Place" on the Hutton Park plat filed with West Orange, when the plat was filed. Highway Holding Co. v. Yara Engineering Corp., 22 N.J. 119, 127 (1956) (property for streets dedicated to public if sold with reference to plat on which lots and streets delineated). The reason for Supplee's subsequent transfer of Lot 38 to Ross does not appear. In any event, there had still been a dedication.
[4] The recording of the deed conveying Lot 38 from Ross or the resolution by the West Orange Township Council authorizing the sale of Lot 38 may be construed as acknowledgment of the dedication. See State v. Birch, 115 N.J. Super. 457, 464 (App.Div. 1971); 11 McQuillin, Municipal Corporations, § 33.48 at 753-754 (3d ed. 1983).
[5] N.J.S.A. 40A:12-13.2 states:

Notwithstanding any provision of law to the contrary, whenever any municipality intends to sell real property which is less than the minimum size required for development under the municipal zoning ordinance and is without any capital improvements thereon, it shall accord the owner or owners of any real property contiguous to such real property the right to prior refusal to purchase such land.
[6] Certain arguments relating to the authenticity of documents should have been resolved between the attorneys by stipulation since recorded documents were readily available for inspection. Cf. R. 4:23-3 (When party fails to admit genuineness of document, other party may seek order for expenses in procuring such proof).