903 A.2d 418 (2006)
387 N.J. Super. 65
TOWNSHIP OF MIDDLETOWN, Plaintiff-Appellant, and
Peter Lynch and Clifford Raisch, Plaintiffs/Intervenors-Respondents,
v.
Richard SIMON, Trustee,
Jeffrey Jerman, and Lamberto Builders, L.L.C. Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 20, 2005.
Decided July 31, 2006.
*420 Bernard M. Reilly, Red Bank, argued the cause for appellant Township of Middletown (Dowd & Reilly, attorneys; Mr. Reilly, on the brief).
Paul H. Schafhauser, Newark, argued the cause for respondent Richard Simon, Trustee (Herrick, Feinstein, attorneys; Mr. Schafhauser, on the brief).
Keith A. Bonchi, Atlantic City, argued the cause for respondent Jeffrey Jerman (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys; Mr. Bonchi, on the brief).
Convery & Convery, attorneys for respondents Peter Lynch and Clifford Raisch relies on the brief of appellant Township of Middletown.
Martin A. McGann, Jr., Red Bank, attorney for respondent Lamberto Builders, L.L.C., relies on brief of respondents Richard Simon, Trustee and Jeffrey Jerman.
Before Judges SKILLMAN, AXELRAD and PAYNE.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
This appeal requires us to consider the effect of issuance of a tax sale certificate and entry of a tax foreclosure judgment upon a dedication of the foreclosed property for public use.
In 1929, the Middletown Township governing body approved an application by Elmer and Nellie Alexander to subdivide a tract of vacant land into fifty-seven lots for residential development. Fifty-six lots were numbered, and one lot, designated on the map as "Park," which is the subject of this litigation, was unnumbered. In 1932, the Alexanders recorded the approved subdivision map.
The proposed subdivision was located on a lake called Shadow Lake. However, only twenty of the fifty-six numbered lots and the lot designated as a park afforded direct access to the lake.
Between 1932 and 1938, the Alexanders conveyed two lots in the subdivision by reference to the subdivision map. The deed to the purchaser of the first lot restricted development to construction of a single-family residence and imposed various other restrictions, including setback requirements. The deed provided that these restrictions would run with the land and continue in effect until 1950.
In 1938, Nellie Alexander entered into an agreement with the purchasers of the first two lots that imposed restrictions on development of their lots and nineteen of *421 the unsold lots. These restrictions were similar to the restrictions contained in the deed to the first purchaser of a lot. The agreement provided that these restrictions would run with the land and would continue in effect until 1962. In addition, the agreement contained a provision obligating Nellie Alexander and her successors to maintain the lot designated "Park" and certain streets in the development until this responsibility was assumed by Middletown:
The drive known as Alexander Drive and the place known as Sunrise Place and the road known as Orchard Road and the parcel of land marked `Park' on the said map, shall at all times hereafter, until the care and maintenance thereof shall be taken over by the municipality be cared for and maintained by [Nellie Alexander], her heirs and assigns.
The agreement also stated: "[I]t being understood and agreed that no street, roads, avenues, parks or any other land is intended to be dedicated to public use by reference thereto or by reference to the [filed subdivision] map."
Between 1938 and 1956, the Alexanders conveyed twenty-one other lots in the subdivision. The deeds all described the lots by reference to the 1932 filed subdivision map. In addition, one deed conveyed the lot "[t]ogether with the right to use, in common with others, the park and Shadow Lake." Only one of the deeds included a specific reference to the 1938 agreement between Nellie Alexander and the purchasers of the first two lots.
For tax purposes, the park lot was initially appended to an adjoining lot and given only a nominal assessment. When the adjoining lot was sold in 1988, a question arose as to whether the boundaries of the lot corresponded with the tax records. To resolve this problem, the tax assessor gave the park lot a separate lot designation and assessment. Because the assessor was unable to identify the owner of this lot, the tax records indicated: "Owners Unknown." Thereafter, no taxes were paid for this lot.
In 1995, Middletown Township sold a tax sale certificate for the park lot to defendant Richard Simon, who subsequently paid delinquent taxes on the lot as well as interest and costs of the tax sale.
In 2000, Simon brought a tax foreclosure action seeking title to the park lot in which Nellie Alexander and other descendants of Elmer Alexander were named as defendants. Clifford Raisch, who owned the adjoining lot to which the park lot was initially appended for tax purposes and allegedly had obtained title to the park lot in 1999, was later joined as a defendant.
Raisch filed an answer contending that Middletown was an indispensable party to the tax foreclosure action because the subdivision map recorded by the Alexanders had dedicated the lot as a park, and the municipality had a "continuing right" to accept the dedication. The trial court in the foreclosure action rejected this contention and held that the park lot was not dedicated to public use. As a result, Middletown was not joined and did not participate in the tax foreclosure action. The court struck Raisch's answer, and a final judgment was entered vesting Simon with title to the lot.
Simon subsequently entered into a contract to sell the lot to defendant Lamberto Builders, LLC, which plans to construct a residence on it. When these plans became known, the owners of homes in the Shadow Lake Park development voiced objections to the Middletown governing body, claiming that the park lot was dedicated for park use and therefore could not be developed.
*422 Middletown then filed this action against Simon, Lamberto Builders and Jeffrey Jerman, who allegedly has an ownership interest in the lot, seeking a declaration that the park lot is dedicated for use as a park. Two homeowners in the development, Peter Lynch and Clifford Raisch, were granted leave to intervene.
During the pendency of this action, Middletown's governing body adopted an ordinance in September 2004 accepting the dedication of the park lot. This ordinance states that the park lot "has been open and vacant and utilized by the development's lot owners and the public for passive recreation and access to Shadow Lake" since its dedication in 1929 and "formal acceptance of that dedication by this Ordinance would assist in establishing and clarifying this `park' parcel as a Township accepted public park."
The case was brought before the trial court by cross-motions for summary judgment. The court concluded that Middletown was in privity with the property owner, Raisch, who contested Simon's tax foreclosure action, and therefore, Middletown was barred under the doctrines of res judicata and collateral estoppel from relitigating the trial court's ruling in the foreclosure action that the park lot was not dedicated to public use. The court also indicated that even if Middletown were not barred from relitigating the issue, it would conclude substantially for the reasons stated by the trial court in the tax foreclosure action that the park lot was not dedicated to public use. In particular, the trial court adopted the reasoning of the court in the foreclosure action that the 1938 agreement between the Alexanders and the first two purchasers of lots in the Shadow Lake development showed that the Alexanders did not intend to dedicate the park lot for public use. The court also expressed its agreement with the conclusion of the court in the foreclosure action that Middletown's assessment of taxes and sale of a tax certificate for the unpaid taxes on the lot barred the municipality from now asserting that the lot was dedicated to public use. Accordingly, the court entered a final judgment dismissing Middletown's complaint. Middletown appeals.
We conclude that Middletown is not barred by collateral estoppel from litigating the issue of whether the park lot is dedicated to public use. We also conclude that the Alexanders' filing of the subdivision map designating the unnumbered lot as a park and subsequent sale of lots in the subdivision with reference to that map constituted a dedication of the lot for use as a park. Therefore, we reverse.

I
Defendants' argument that Middletown is barred by collateral estoppel from asserting that the park lot is dedicated to public use is based on the trial court decision in Simon's tax foreclosure action. As previously noted, the named defendants in that action were members of the Alexander family and Clifford Raisch, who owns the lot adjoining the park lot and also at some point may have acquired title to the park lot. Raisch apparently was the only defendant who opposed foreclosure. He argued that Middletown was an indispensable party because Elmer and Nellie Alexander had dedicated the lot as a park.
In rejecting this argument, the trial court in the foreclosure action stated:
Raisch contends that the subject land was dedicated to Middletown. In support of his contention, he relies on paragraph 3 of the 1938 Agreement and the filed subdivision map of Shadow Lake Park which designates the subject property as a "Park." Defendant's contentions are erroneous, however, for several *423 reasons. First, the Agreement on which Raisch relies has expired. Second, although, as defendant argues, it is a general rule that where "an urban property owner laying off all property in lots with streets, avenues, and alleys intersecting on a map, will be deemed to have dedicated such streets, avenues and alleys to [the] public," in the instant matter, the 1938 Agreement specifically states that "no streets, roads, avenues, parks or any other land is intended to be dedicated to public use by reference thereto or by reference to the said map." Accordingly, it is clear from the Agreement that notwithstanding the designations on the map, the previous owners did not intend for the land to be dedicated for public use.
Furthermore, there is no evidence of acceptance by the municipality of the area as a park. Rather, the municipality has acted in a manner contrary to that of acceptance by putting the lands up for public sale and issuing a tax sale certificate. As the plaintiff rightly pointed out, if the municipality intended to accept the alleged dedication it would not have assessed taxes and issued a tax sale certificate.
Based on this ruling, Middletown was not joined as a party to the foreclosure action.
To foreclose relitigation of an issue based on collateral estoppel, "the party asserting the bar must show that (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." Sacharow v. Sacharow, 177 N.J. 62, 76, 826 A.2d 710 (2003) (quoting In re Estate of Dawson, 136 N.J. 1, 20-21, 641 A.2d 1026 (1994)).
The previously quoted excerpt from the trial court's opinion in the tax foreclosure action indicates that the issue of whether the Alexanders dedicated the park lot for public use was actually litigated in that action, and the identical issue is presented in this case. Furthermore, the tax foreclosure action resulted in a final judgment in Simon's favor. Consequently, Simon has established the first three prerequisites of collateral estoppel. In addition, we assume, without deciding, that Middletown was "in privity" with Raisch and thus that the fifth prerequisite of collateral estoppel was established. However, we conclude that a determination of whether the Alexanders dedicated the park lot was not "essential to the ... judgment" in the tax foreclosure action, and therefore, the fourth prerequisite for invocation of collateral estoppel to bar relitigation of this issue was not established.[1]
Initially, it is necessary to identify the interest a municipality acquires when land is dedicated for public use and the interest a plaintiff acquires when a final judgment is entered in a tax foreclosure action. When a private property owner dedicates land for public use, he or she makes an offer of a public easement and the municipality has a continuing right to accept the dedication at any time, unless it rejects the dedication by official municipal *424 action. See Highway Holding Co. v. Yara Eng'g Corp., 22 N.J. 119, 126-27, 123 A.2d 511 (1956); Englander v. Twp. of W. Orange, 224 N.J.Super. 182, 188-89, 539 A.2d 1271 (App.Div.1988). However, until the municipality accepts the dedication, it acquires no interest in the land. See State, by State Highway Comm'r v. Cooper, 24 N.J. 261, 267, 131 A.2d 756 (1957). Therefore, a party who dedicates land to public use retains ownership and continues to be liable for the payment of property taxes. Point Pleasant Manor Bldg. Co. v. Brown, 42 N.J.Super. 297, 305, 126 A.2d 219 (App.Div.1956), certif. denied, 23 N.J. 140, 128 A.2d 309 (1957); Bellemead Dev. Corp. v. Twp. of Lyndhurst, 6 N.J.Tax 246, 249 (Tax Ct.1984). However, the assessment of the land must reflect its dedication to a public use, which may result in an assessment for only a nominal amount. See Village of Ridgewood v. Bolger Found., 104 N.J. 337, 340-42, 517 A.2d 135 (1986); Borough of Englewood Cliffs v. Estate of Allison, 69 N.J.Super. 514, 529-31, 174 A.2d 631 (App.Div.1961).
When a party acquires title to property by a tax foreclosure action, that party only acquires the fee interest in the land that was subject to taxes. See Lipman v. Shriver, 51 N.J.Super. 356, 359-61, 144 A.2d 37 (Law Div.1958). Consequently, if the former owner dedicated the property to a public use, a party that acquires title by a tax foreclosure action takes the property subject to the public use and the municipality's continuing right to accept the dedication. See Chelsea Laundry Co. v. Toscano, 14 N.J.Super. 496, 499, 82 A.2d 473 (Ch.Div.1951); Niestat v. Equitable Sec. Co., 138 N.J. Eq. 480, 483-84, 48 A.2d 907 (Ch.1946).
With this understanding of the interests in land dedicated to a public use that is the subject of a tax foreclosure, it is clear that the determination whether the Alexanders dedicated the park lot for use as a park was not essential to the judgment in the tax foreclosure action. Middletown did not accept the alleged dedication until 2004, when it adopted an ordinance for this purpose. Thus, if the Alexanders made a valid dedication of the lot for use as a park, the Alexanders and their successors in title continued to own the lot and remained subject to property taxes. See Point Pleasant Manor Bldg. Co. v. Brown, supra, 42 N.J.Super. at 305, 126 A.2d 219. Furthermore, Simon's tax foreclosure action had no capacity to affect Middletown's continuing right to accept the dedication. The entry of a final judgment of foreclosure could only result in a transfer of title to the park lot, subject to the alleged dedication, just as would a voluntary conveyance to a third party. See Lipman v. Shriver, supra, 51 N.J.Super. at 360-61, 144 A.2d 37. Consequently, regardless of whether the Alexanders dedicated the park lot for public use, Middletown was not an indispensable party to the tax foreclosure action, and there was no need for the court in that action to consider the validity of the dedication to determine Simon's right to foreclose. Therefore, the court's conclusions in the foreclosure action regarding the dedication of the park lot for public use were unnecessary dicta and for that reason do not bar Middletown from relitigating the issue in this case.

II
"When lands are sold with reference to a map upon which lots and streets are delineated, there is a dedication of such streets to the public, and such dedication continues and cannot be revoked except by consent of the municipality." Highway Holding Co. v. Yara Eng'g Corp., supra, 22 N.J. at 125-26, 123 A.2d 511. "After such dedication of streets to the public use, the public has the right to *425 appropriate them at any time it wants or convenience requires." Id. at 126, 123 A.2d 511; see generally Roger A. Cunningham & Saul Tischler, Dedication of Land in New Jersey, 15 Rutgers L.Rev. 377, 386-91 (1961). "The same rule of dedication applies where the filed map contains an area or lot marked `park' or for a similar recreational purpose." Brookdale Park Homes, Inc. v. Twp. of Bridgewater, 115 N.J.Super. 489, 499, 280 A.2d 227 (Ch. Div.1971); see State, by State Highway Comm'r v. Cooper, supra, 24 N.J. at 266, 131 A.2d 756; Price v. City of Plainfield, 40 N.J.L. 608, 613-14 (E. & A. 1878); Cunningham & Tischler, supra, 15 Rutgers L.Rev. at 378 n. 5 (collecting cases).
The Alexanders' subdivision map for the Shadow Lake Park development, which the Middletown governing body approved in 1929 and the Alexanders recorded in 1932, divided their property into fifty-six numbered residential lots and a single unnumbered lot marked "Park." The park lot is located on Shadow Lake, and because the majority of lots in the subdivision are not located on the lake, this lot provides the only access to the lake for prospective purchasers of those lots. Between 1932 and 1956, the Alexanders sold at least twenty-three of these residential lots with specific reference to the recorded map that designated the unnumbered lot as a "Park." Therefore, the Alexanders' recording of the subdivision map and subsequent sale of residential lots with reference to that map constituted an irrevocable dedication of the lot for public use as a park. Highway Holding Co. v. Yara Eng'g Corp., supra, 22 N.J. at 125-26, 123 A.2d 511; Velasco v. Goldman Builders, Inc., 93 N.J.Super. 123, 134-35, 225 A.2d 148 (App.Div.1966).
In concluding that the park lot was not dedicated for public use, the trial court relied upon the part of the 1938 agreement between the Alexanders and the first two purchasers of lots, which stated that it was "understood and agreed that no street, roads, avenues, parks or any other land is intended to be dedicated to public use . . . by reference to the [filed subdivision] map." However, whatever this part of the agreement may indicate regarding the Alexanders' intent in 1938, the Alexanders had already dedicated the park lot for public use by filing the subdivision map in 1932 and subsequently selling lots based on that map. Once that dedication became effective, the Alexanders lost the power to revoke the dedication. Highway Holding Co. v. Yara Eng'g Corp., supra, 22 N.J. at 126, 123 A.2d 511. Thereafter, the public rights conferred by the dedication could "only be destroyed by proper municipal action[.]" Ibid.
Moreover, there are other sections of the 1938 agreement that indicate the parties did not intend to revoke the dedication of the park lot for use as a park. Paragraph three provides that "the parcel of land marked `Park' on the said map shall at all times hereafter, until the care and maintenance thereof shall be taken over by the municipality [,] be cared for and maintained by [Nellie Alexander], her heirs and assigns." (Emphasis added). Thus, this paragraph reflects the parties' expectation that responsibility for care and maintenance of the park lot eventually would be "taken over by the municipality[,]" and thus reaffirms the Alexanders' dedication of the lot for public use. The Alexanders' assumption of responsibility for maintenance of the park until Middletown accepted the dedication also suggests that the Alexanders considered the park lot, and the access it provides to the lake, to be vital in promoting sales of the remaining lots in the subdivision.
Even if the 1938 agreement could be read to express an intent to revoke or *426 modify the dedication of the park lot for use as a public park, this agreement was only referenced in one of the subsequent deeds to the remaining lots, all of which described the lots by reference to the 1932 subdivision map that showed the unnumbered lot designated as a "Park." Therefore, the conveyances of remaining lots in the subdivision by reference to the 1932 map reinforces the conclusion that the Alexanders made an irrevocable dedication of the park lot for public use as a park that was not affected by the 1938 agreement.[2]
In concluding that the park lot is not dedicated for public use and that Middletown's purported acceptance of the dedication was ineffective, the trial court also relied on Middletown's assessment of taxes on the lot and its sale of a tax sale certificate to Simon. However, as previously discussed, despite the Alexanders' dedication of the lot for use as a park, it remained subject to taxes. See Point Pleasant Manor Bldg. Co. v. Brown, supra, 42 N.J.Super. at 305, 126 A.2d 219. Consequently, when the taxes were not paid, Middletown had a right to issue a tax sale certificate, see N.J.S.A. 54:5-19, and Simon acquired valid title to the lot in the tax foreclosure action. But this title was subject to the dedication of the land for use as a park, just as it would have been if the Alexanders had retained title to the lot or sold it to a third party. Indeed, even after Middletown's acceptance of the dedication, defendants still retain "bare legal title" to the lot. See State, by State Highway Comm'r v. Cooper, supra, 24 N.J. at 266, 131 A.2d 756 (quoting Hill v. Borough of Belmar, 3 N.J. Misc. 254, 256, 127 A. 789 (Sup.Ct.1925)). Therefore, Middletown's issuance of a tax sale certificate for the lot and the tax foreclosure judgment vesting title to the lot in Simon are not inconsistent with our conclusion that the lot is dedicated for use as a public park.

III
Defendants argue that a judgment declaring that the park lot is dedicated to public use would undermine the effectiveness of the Recording Act, N.J.S.A. 46:15-1.1 to 46:26-1, and that Middletown should be foreclosed by the doctrines of estoppel and laches from asserting such a dedication. These arguments are clearly without merit and only require brief discussion. R. 2:11-3(e)(1)(E).
The Alexanders' filing of the subdivision map designating an unnumbered lot on the map as a "Park" provided record notice to purchasers of lots in the subdivision as well as purchasers of tax sale certificates of the dedication of this lot as a public park. See N.J.S.A. 46:23-9.9 to -11. Middletown was not required to record any additional document reflecting its inchoate right to accept the dedication.
Defendants' estoppel and laches arguments are based on Middletown's issuance of tax sale certificates for the park lot and Middletown's failure to intervene in the tax foreclosure action. However, as previously discussed, there is no inherent inconsistency between issuance of a tax sale certificate or entry of a tax foreclosure judgment on a lot and a municipality's assertion that the lot is dedicated to public use as a result of its designation for that use in a filed subdivision map. See Point *427 Pleasant Manor Bldg. Co. v. Brown, supra, 42 N.J.Super. at 304-05, 126 A.2d 219; see also Cunningham & Tischler, supra, 14 Rutgers L.Rev. at 396 (noting that "the collection of taxes on land which has been dedicated to public use will not estop a municipality from later accepting the dedication"). In any event, even if the issuance of a tax sale certificate were considered inconsistent with the dedication of a lot for a public use, a municipality can reject a dedication only by adoption of an ordinance in conformity with N.J.S.A. 40:67-19, see Englander v. Twp. of W. Orange, supra, 224 N.J.Super. at 188-89, 539 A.2d 1271; Priory v. Borough of Manasquan, 39 N.J.Super. 147, 160, 120 A.2d 625 (App.Div.1956), which Middletown never did.
Finally, we reject defendants' suggestion that Middletown's claim that the park lot was dedicated to public use, and its subsequent acceptance of that dedication, was unfair to defendants. Defendants had record notice of the subdivision map that designated the lot for use as a park, and an inspection of the lot would have revealed that it has been developed and maintained as a park providing access to Shadow Lake. Therefore, the defendants had to have been aware they would be able to construct a house on the lot only if neither Middletown nor the owners of other lots in the Shadow Lake Park development attempted to enforce the dedication or if the defendants were able to persuade a court that the filed subdivision map had not resulted in a dedication of the lot for use as a park. Defendants undoubtedly calculated that there was a sufficient possibility of one of these contingencies occurring to warrant the expenditure of whatever amounts were required to purchase the tax sale certificate and foreclose on the lot.
Accordingly, the final judgment dismissing the complaint is reversed and the case is remanded to the trial court for entry of a judgment declaring that the park lot is dedicated to public use as a park.
NOTES
[1] Because defendants failed to establish this prerequisite of collateral estoppel, there is no need to consider whether any of the exceptions to collateral estoppel recognized in section 28 of the Restatement (Second) of Judgments would apply under the circumstances of this case. See Ensslin v. Twp. of N. Bergen, 275 N.J.Super. 352, 370, 646 A.2d 452 (App. Div.1994), certif. denied, 142 N.J. 446, 663 A.2d 1354 (1995).
[2] Because we conclude that the park lot was dedicated for public use, and Middletown has now accepted this dedication, there is no need to consider Middletown's alternative contention that the owners of lots in Shadow Lake Park that were sold with reference to the subdivision map acquired an implied private right to use the lot as a park. See Bubis v. Kassin, 323 N.J.Super. 601, 610-12, 733 A.2d 1232 (App.Div.1999); Lennig v. Ocean City Ass'n, 41 N.J. Eq. 606, 609-10, 7 A. 491 (E. & A. 1886).