NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0082-19T2
                 A-0093-19T2

GARDEN STATE INVESTMENT
and ISADORE H. MAY t/a
GARDEN STATE
INVESTMENTS, II,

     Plaintiffs-Appellants,

APPROVED FOR PUBLICATION

December 10, 2020

APPELLATE DIVISION

v.

TOWNSHIP OF BRICK, NEW
JERSEY,

     Defendant-Respondent.

_____

THE APPROVED REALTY GROUP,
LLC,

     Defendant-Appellant,

v.

TOWNSHIP OF BRICK, NEW
JERSEY,

     Defendant-Respondent.

_____

Submitted October 27, 2020 – Decided December 10, 2020

Before Judges Fisher, Gilson and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket Nos. C-0234-17 and C-0080-18.

Ford, Flower, Hasbrouck & Loefflad, attorneys for appellants (Willis F. Flower, on the briefs).

Grace, Marmero & Associates, LLP, attorneys for respondent (Michael R. Burns, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

Plaintiffs are the purchasers of tax sale certificates on vacant lots in Brick Township (the township). Plaintiffs, who admit they have "extensive experience" in making these types of investments, acknowledge they each did the same depth of research prior to purchasing the tax sale certificates: they physically inspected the properties and examined the assessment records and tax map maintained by the tax assessor. What they did not do was obtain title searches prior to their purchases. Instead, they paid taxes on the properties and bided their time until entitled to commence foreclosure actions. With the foreclosure actions underway, plaintiffs finally obtained title searches, learning for the first time that the properties were encumbered by a conservation

easement.[1]  Soon after this revelation, plaintiffs filed their separate complaints in these two matters, seeking rescission of their tax sale certificate purchases and reimbursement of taxes they paid on the properties.  In ruling on cross-motions for summary judgment, the chancery judge found plaintiffs were not entitled to equitable relief and denied rescission.  We agree and affirm the judgments entered in both matters.

There are no disputed facts, only arguments about the significance of those facts.  Simply put, the former owner of a large tract of land engaged in litigation with the Department of Environmental Protection (DEP) that ended in 2001, when the DEP consented to the construction of thirty-four dwellings on the tract in exchange for the owner's agreement "not to disturb in perpetuity" those lots now involved in these suits.  To ensure compliance, the settlement agreement required the owner's execution and recordation of a deed declaring each affected lot would thereafter be burdened by a "conservation/restriction easement."  See Village of Ridgewood v. Bolger Foundation, 104 N.J. 337, 340-41 (1986).  The

---

[1]  Although stating in a certification that The Approved Realty Group's attorney obtained a title search when commencing the foreclosure action, its principal stated that he was unaware of the conservation easement until making attempts to sell the foreclosed property.

A-0082-19T2

property owner and the DEP also agreed this restriction "shall run with the land and be binding upon all successive owners."

In February 2002, the DEP advised the municipal clerk of the conservation easement. The township's tax collector, who has held that position since 1989, filed an unrebutted certification asserting that information about the existence of the conservation easement was not forwarded to her office, nor did the property owner ever seek a reduction in the encumbered lots' assessed values. The assessment card did not indicate the presence of the conservation easement, and the tax collector certified she was personally unaware of the conservation easement until plaintiffs learned of it.

In appealing, plaintiffs rely almost entirely on Township of Middletown v. Simon, 193 N.J. 228 (2008), affirming in part, 387 N.J. Super. 65 (App. Div. 2006), which they claim entitles them to a rescission of their tax sale certificate purchases and reimbursement of the taxes they have since paid on these properties.[2] We find Middletown dissimilar.

Because plaintiffs bank so much on Middletown, we find it necessary to discuss it in depth. The record there revealed that, in 1929, owners subdivided

---

[2] We find insufficient merit in plaintiffs' other arguments to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

a large tract of land adjacent to Shadow Lake into fifty-six residential lots, and one lot labeled "Park" (the Park lot). When one of the improved lots was sold some sixty years later, it was learned that the Park lot had been mistakenly joined for tax purposes with that other lot; consequently, the tax assessor gave the Park lot a separate tax designation and listed the owner as "unknown." 193 N.J. at 233. Thereafter, taxes on the Park lot went unpaid, and tax sale certificates were sold to different individuals in 1990, 1991, and 1995. Id. at 233-34.

Following his purchase of a tax sale certificate in 1995, Richard Simon paid the taxes on the Park lot for the following five years and commenced a tax sale foreclosure action in 2000. Id. at 234. Simon joined as a defendant, among others, the owner of the formerly adjoining lot; that defendant filed an answer, asserting Middletown was an indispensable party because of the dedication for public use. By motion, the trial court rejected that defense and determined that the original owners did not intend to dedicate the Park lot for public use. Ibid.

Despite that ruling, Middletown's attorney approached Simon's attorney, taking the position that the tax sale certificates on the Park lot had been sold in error and seeking a compromise. Ibid. Nothing was resolved, and Middletown was neither joined as an indispensable party nor sought to intervene, id. at 234-

35, allowing Simon to proceed forward, obtain a foreclosure judgment, and sell the property to a developer, who planned to build a residence on the Park lot.

When property owners near Shadow Lake "voiced objections" to Middletown's governing body about the proposed construction on the Park lot, 387 N.J. Super. at 72, Middletown filed an action against Simon, the preceding tax sale certificate purchasers, and the developer (collectively, the defendants), seeking a declaration that the Park lot was dedicated for public use. After commencing the action, Middletown's governing body adopted an ordinance accepting the dedication of the Park lot for public use.

On cross-motions, the trial judge determined that Middletown did not have a dedicated interest. 193 N.J. at 231-32. On appeal, we reversed, holding that Middletown was not barred by estoppel principles because the dedication of the lot for public use was "irrevocable." 387 N.J. Super. at 77.

The Supreme Court agreed with our determination that the Park lot was subject to an irrevocable dedication to public use even though Middletown failed to accept that dedication for so many years. 193 N.J. at 240-42. The Court held that the disposition of Simon's foreclosure action, which was based in part on a determination that the original owners did not dedicate the Park lot for public use, as well as Middletown's course of conduct in selling a tax sale certificate

A-0082-19T2

despite the dedication, did not prevent Middletown from accepting – seventy-eight years later – the dedication of the lot as a park. Id. at 242-43. The Court, however, went further than we did and concluded that the defendants were entitled to an equitable remedy because of these unusual circumstances. The Court remanded the matter to allow the defendants reimbursement of the taxes paid. Id. at 245-46. Plaintiffs claim entitlement to a similar remedy.

We agree with the trial judge that plaintiffs are not entitled to equitable relief because of the significant differences between these cases and Middletown. Particularly relevant is the fact that Middletown played an active role in seeking to deprive Simon of his investment. Middletown sold tax sale certificates for unpaid taxes on the Park lot: a step that certainly suggested its own lack of interest in accepting the dedication. That alone would not have been enough to support the equitable claim, but when Simon rebuffed Middletown's desire to negotiate a resolution, Middletown allowed Simon to continue to seek a foreclosure judgment without intervening, later commenced its own action for a declaratory judgment about the dedication, and then took the step of actually adopting an ordinance that formally accepted the dedication, which deprived Simon of his investment.

Unlike Middletown, the township here took no affirmative action with respect to these lots. The tax assessor has asserted, without contradiction, that she had no knowledge of the conservation easement. When taxes went unpaid, the routine step of selling tax sale certificates was taken. As we recognized in Middletown, there was no inconsistency with Middletown's issuance of a tax sale certificate and its belief that the property was dedicated to public use, 387 N.J. Super. at 80, and no basis to allow such a circumstance to give the purchaser an equitable remedy upon later learning of facts that would reveal their poor investment. It was Middletown's later change in approach toward the Park lot that gave rise to the investor's right to the remedy of rescission and the reimbursement of paid taxes. In those unusual circumstances, the Court viewed Middletown as having been unjustly enriched by selling a tax sale certificate and accepting the taxes paid by the purchaser prior to the foreclosure action and then, years later, resurrecting its long-dormant right to accept the park designation for its own benefit. 193 N.J. at 245-46.

Moreover, the Court emphasized that Middletown was amenable to granting the defendants that relief. Id. at 245. In its declaratory-judgment action, it was Middletown that initially sought imposition of a remedy for the investor, by demanding a determination of "the amount it should reimburse to

defendants." Ibid. Concluding this was "a fair request," the Court held that "a fair and equitable remedy is to bind [Middletown] to its prayer for the court to fix the amount it should reimburse defendants." Ibid. These circumstances were not present here.

We conclude the chancery judge appropriately viewed the circumstances to be materially different from those in Middletown. The township tax assessor was unaware of the conservation easement. While its existence was ascertainable to all – since deeds containing the easement had been recorded in the County Clerk's Office – plaintiffs, by engaging in this form of investment, had a greater interest in learning of any limitations on the property than the township did. Unlike Middletown, the township was passive throughout; it took none of the affirmative steps Middletown took to pull the rug out from under the investor. Middletown allowed Simon to continue to pursue his foreclosure action and expend funds only to eviscerate his investment opportunity by accepting the public use dedication at a later date.

The township made no misrepresentation and engaged in no unfair conduct that would give plaintiffs a right to an equitable remedy, as the trial judge correctly concluded. See Manor Real Estate & Trust Co. v. City of Linden, 8 N.J. Super. 114, 116 (App. Div. 1950); see also Simon v. Twp. of

Voorhees, 289 N.J. Super. 116, 122 (App. Div. 1996) (recognizing the "general rule . . . that the holder of a tax certificate may not be reimbursed by a taxing authority in the absence of a statute giving that right").  Plaintiffs and the township were laboring under the same misunderstanding about the property.  And both sides had the same ability to learn more.  The township, however, had no reason to be curious about the lots or inquire further,[3] while plaintiffs had every reason to uncover all material circumstances about their investments.  Plaintiffs' failure to act more diligently in ascertaining any defects in or limitations on their investments bars their claim for equitable relief, particularly against the township, which acted passively and innocently throughout.  See Harrington v. Heder, 109 N.J. Eq. 528, 534 (E. & A. 1932) (invoking the maxim that "[e]quity does not aid one whose indifference contributes materially to the injury he complains of"); Lever v. Thomas, 340 N.J. Super. 198, 203 (App. Div. 2001) (invoking the maxim that "equity favors the vigilant").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Nor did the township tax assessor have any hint that things had changed with these lots because the prior owner never sought a reassessment when or after the conservation easement was imposed.

A-0082-19T2