HARVEY I. TWEDDELL ET AL., PROSECUTORS, v. VILLAGE OF SOUTH ORANGE, RESPONDENT.

Submitted December 2, 1920—Decided February 3, 1921.

1. The practice is firmly settled that the Supreme Court in banc will entertain an application for allowance of a writ of *certiorari* after the refusal of an *allocatur* by a single judge of the court, when the substantial rights of the party appear to be involved and the party is not barred by laches or some similar reason. *Key* v. *Paul*, 61 *N. J. L.* 133, explained.

2. A single justice of the Supreme Court acts, normally, as a single justice and not as the court itself, in awarding and determining a rule to show cause why a writ of *certiorari* should not be allowed.

3. On the question of dedication as a public highway of a street about four hundred and twenty-five feet long, connecting two other streets, where it appears without dispute that various owners for the time being of the land on both sides of such alleged street had made conveyances to purchasers bounding the property upon and running it along said street without any reservation or declaration that it was not intended thereby to dedicate it and that such conveyances embraced the whole of one side of the street and two-thirds of the other side, *held*, that such street was effectually dedicated as a public highway.

4. Where there has been an actual dedication it may be accepted by the public at any time, and mere delay, however long, does not impair the right.

5. The annual taxation of dedicated lands by the municipal authorities is no estoppel against a subsequent acceptance of such dedication.

6. What passes normally by the act of dedication and acceptance of land as a highway is the right of public user; the fee subject to such user remaining in the dedicators and those holding under them.

On application for a writ of *certiorari* to review report of the board of assessments of the village of South Orange assessing damages for the taking of lands for the opening of a street to be known as Fifth street.

Before Justices SWAYZE, PARKER and BLACK.

For the prosecutors, *Merritt Lane*.

For the respondent, *Adrian Riker*.

The opinion of the court was delivered by

PARKER, J.   We gather from the briefs of counsel that application for this writ was made, in the first instance, to the Chief Justice, and that *allocatur* was denied by him. Prosecutors have thereupon come to the court in banc, following the practice recognized in such cases as *Key* v. *Paul*, 61 *N. J. L.* 133.  Defendants object that that decision is not applicable on the ground that the allowance of a writ of *certiorari* is discretionary, and that Key *v.* Paul excludes that class of cases; but we think they have mistaken the purport of that decision.  The opinion says that when the motion appeals merely to the discretion of the judge and does not involve the substantial rights of the parties, the court will usually not review his action.

In the present case the question is whether the prosecutors have a substantial right which would be affected by the refusal to allow a writ; and as their claim is that the defendants have undertaken to take land or an easement in land belonging to them without making any compensation whatever for the same, it is plain that if they are entitled to compensation, as they say they are, a substantial right has been affected.  Hardly a term passes in which no application is made to the court in banc for the award of a *certiorari* after the refusal of an *allocatur* by a single judge; the practice is firmly settled.

The next objection to the allowance of the writ as a matter of practice is that the Chief Justice, in entertaining the application, was sitting, under the statute, as the Supreme Court.  But there is nothing at all in the case before us to indicate this.  So far as we can gather from the briefs, the Chief Justice made a rule to show cause returnable before himself why a writ of *certiorari* should not be allowed; and at or after the return of the rule concluded to deny the *allocatur* and, accordingly, discharged the rule.  This also is

every-day practice, and it has never been intimated so far
that a single justice was sitting as the court merely because,
instead of awarding an *allocatur* or denying it, he chose to
have the matter exploited by a rule to show cause. This
reason, also, is without substance.

The cases cited by the defendants such as *Dubelbeiss* v.
*West Hoboken*, 81 *N. J. L.* 98, are cases where *certiorari* was
heard on final hearing and after allowance under section 5
of the *Certiorari* act. *Comp. Stat., p.* 403. The third point
of practice urged against the allowance of the writ is that
after the award was made and which award provided that
the prosecutors were not entitled to any compensation for the
appropriation of their land as a public street, they appealed
the matter to the Circuit Court of the county of Essex, and
that appeal is still pending. As to this our view is that the
appeal to the Circuit Court is normally upon the question of
how much damages the prosecutors are entitled to and not, as
in the present case, as to whether they are entitled to any
damages at all, or are barred, as the defendants claim, by
dedication of the lands taken.

We come, therefore, to the merits of the controversy. The
ground on which all compensation was refused to the prose-
cutors by the commissioners for the municipality was that
they, or those under whom they claim, had some years since
dedicated the lands lying within the lines of the new street
called Fifth street to the public use, and that in such case
they are not entitled to any compensation when the public
accepts the dedication and undertakes to open the street.
This is the rule settled by the leading case, among others, of
*Clark* v. *Elizabeth*, 37 *N. J. L.* 120, 126; *affirmed*, 40 *Id.*
172. If these lands were, in fact, legally dedicated and ac-
cepted, there should be no *allocatur*.

The fact of dedication appears to be perfectly clear upon
the uncontradicted affidavits in the case, the lands taken con-
sisting of a strip fifty feet wide and about four hundred
and twenty-five feet long, running northwesterly, substan-
tially at right angles between Prospect street on the southeast
and Academy street on the northwest, through a considerable

tract of land which, in the decade between 1870 and 1880, to speak without precision, was owned by Charles E. Gardner. Gardner subsequently transferred ownership to his wife, and during the period when he or she owned the property, various deeds were made by them to purchasers of portions of the tract. The affidavit on the part of the prosecutors states that the claim of dedication by the village was based upon the language of a deed from Gardner to David B. Muchmore in 1873, containing an agreement that Gardner is to open a new street fifty feet wide, making the lot conveyed a corner lot, fronting on Prospect street and said new street, such new street to be opened by said Gardner from Prospect street to the west corner of the above-described lot in one year from the date of said conveyance. The affidavit does not state the description of the lands conveyed, nor does it appear elsewhere in the case. The affidavit does state that "there were other deeds for other tracts which contained the same general provision." This, however, seems not quite ingenuous, for an examination of the affidavit of defendants' title searcher discloses that the provisions were quite different. In 1875, Gardner and wife conveyed to Emma C. Gardner a tract beginning at the intersection of the southeast side of Academy street with the southwest side of Fifth street; thence, along Fifth street southeasterly one hundred and fifty feet; thence parallel with Academy street one hundred feet; thence parallel with Fifth street one hundred and fifty feet to Academy street, and thence northeasterly to the beginning. This mentions Fifth street three times and without any reservation whatever with regard to dedication or any intimation that it is intended for purposes of location only.

In 1879, Gardner and wife conveyed to William McCallum a lot exactly opposite the foregoing on the easterly corner of Fifth and Academy streets by substantially the following description: "Beginning at the easterly corner of Fifth and Academy streets; thence northeasterly along Academy street two hundred and fifty feet; thence southeasterly parallel with Fifth street one hundred and fifty feet; thence southwesterly parallel with Academy street two hundred and fifty

feet; thence (4) with (along) the northeasterly line of Fifth
street one hundred and fifty feet to the beginning."

On December 24th, of the same year, Mr. and Mrs. Gard-
ner conveyed to Sarah J. Gardner, probably their daughter or
other relative, all the lands in the block between Fourth,
Fifth, Academy and Prospect streets not theretofore conveyed
by them to outside parties, and the description runs, for one
hundred and thirty feet northwesterly along the northeasterly
side of Fifth street to the southerly corner of the McCallum
lot.   There is, therefore, unequivocal recognition of Fifth
street along its northeasterly line for two hundred and eighty
feet from Academy street, leaving unaccounted for only about
one hundred and forty feet between the end of this two hun-
dred and eighty-foot line and Prospect street.

The next year, Sarah J. Gardner conveyed two tracts to
Catherine A. Gardner, wife of Charles E. Gardner, the first
tract being called "Residence Prospect Street, Fourth Street,
Academy Street and Fifth Street lots."   This tract is de-
scribed in the same terms as the last preceding deed to Sarah
J. Gardner. The next tract is called "Fifth, Academy and
Prospect street lots, beginning at the easterly corner of
Emma C. Gardner lot on the southwesterly side of Fifth
Street, thence with said side of said street south 50 degrees
15 minutes, east 276 feet more or less to the northwesterly
side of Prospect Street;" thence with Prospect street south-
westerly and northwesterly and back by various courses to the
beginning.   It appears, therefore, that these last deeds em-
brace the entire frontage on the southwesterly side of Fifth
street from Academy street to Prospect street.

The law applicable to a situation like this is not in doubt
in this state, and we deem it unnecessary to multiply cita-
tions of the cases. It is sufficient for present purposes to
cite the case of the *City of Camden* v. *McAndrews & Forbes
Co.*, 85 N. J. L. 260, decided by the Court of Errors and
Appeals in 1913. In that case several phases of the doctrine
of dedication were discussed as, for example, the making and
filing of a plat or map by an owner with streets laid out
thereon, the making of deeds by an owner bounded by or

including land called in the deed a street and without any reservations as to its public use; the combined use of the map and the designation in the deed; and finally the mere acceptance from a former owner of a deed describing the property in terms of the street. The trial court in that case nonsuited the city claiming the lands by dedication, and the nonsuit was sustained in all points except with respect to a tract of land not dedicated by map, but named as a street in the deed under which a former owner took title. That mention and recognition was held to be conclusive upon the defendant in the cause, and that the city was entitled to recover so much of the land within the lines of the street so named as had been conveyed to the defendant by the deed in question; and this decision was rested, in large measure, upon the language of *Clark* v. *Elizabeth, supra.*

Applying this rule, and noting once more that deeds conveying lands bounded by the lines of Fifth street have referred to Fifth street as apparently a public highway without any reservations for its entire length on the southwesterly side and for two-thirds of its length on the northeasterly side, there seems to be no debatable question but that under the decisions of the courts of this state, Fifth street was thereby irrevocably dedicated for public use as a highway between Academy street and Prospect street.

But the prosecutors claim that assuming an original dedication, the rights of the public to take advantage of it have been lost. Counsel frankly admits, to use the language of his brief, that where there has been an actual dedication, it may be accepted by the public at any time and that mere delay, however long, does not impair the right; and it does not seem to be disputed that the resolution or ordinance of the village of South Orange, whatever the municipal action may have been, for the taking of the land within the lines of Fifth street as a public highway, operated as an acceptance by the public so as to make the dedication complete. It is said that the action of the municipality in 1905 amounted to a declination to take the land and so brought the case within the lines of the leading case of *Newark* v. *Pennsylvania Rail-*

*road Co.,* 86 *N. J. L.* 575. In that case, however, there appeared to have been a solemn contract in writing and under seal between the railroad company and the city with regard to track elevation, which contract was expressly authorized by act of the legislature, which the Court of Errors and Appeals held estopped the city from thereby claiming that a previous dedication might be enforced. No such circumstances exist in this case. All that we understand is claimed is "that the action of the Board in 1905 amounted to a rejection." The brief does not explain what this action was, but we gather from the affidavit of the prosecutor that about that time the owner made an agreement (whether in writing or not does not appear) that he would put a drain through from Prospect street to Academy street to care for the storm water, and that, at the same time, the village authorities abandoned a proposed ordinance to open the street and proceeded to assess the property as building lots. We are quite unable to see any estoppel under the circumstances. Whether the storm water drain was a consideration for the abandonment of the ordinance does not appear. The governing body was entirely at liberty to proceed to open the street at that time or to wait until later on as it chose, and it chose not to open at that time. The fact that taxes were assessed on the lands and paid by the owners is, in our judgment, of no legal consequence. Taxes are an annual charge for the use of property by the owner for the time being. The position of the prosecutors appears to be that they are not satisfied with the well-settled rules of dedication and acceptance as laid down by the courts of this state, and that they desire by obtaining the *allocatur* now applied for to carry this question once more to the highest court in this state with a view of overruling the previous decisions. We do not think that the writ of *certiorari* should run in such a case, where the attempt is substantially to unsettle land titles in every part of the state.

The last point urged for the prosecutors is based upon the common law rule of ownership by an abutting owner of the fee to the centre of the highway. The fee of the abutting

lands has passed apparently to other parties. Prosecutors claim, however, to own the fee within the lines of Fifth street, and to substantiate their claim they argue that under the circumstances appearing in this case, the rule of ownership to the middle of the way (*Salter* v. *Jonas*, 39 *N. J. L.* 469) does not apply; but that if this should be held against them, they are, nevertheless, owners by adverse possession. We find it entirely unnecessary to deal with either of these propositions, because the fee of the land within the street lines is not at all in question. What passes to the public by dedication and acceptance is the easement of user of the land as a public highway and it is for this that the damages would be awarded, if any. Consequently, the question who owns the fee is entirely immaterial for present purposes.

The *allocatur* will, therefore, be denied.