**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2604-22

RIVER DRIVE DEVELOPMENT,
LLC, RIVERFRONT
RESIDENTIAL 1 LLC,
RIVERFRONT RESIDENTIAL 2
LLC, and RIVERWALK III, LLC,

     Plaintiffs-Respondents,

v.

BOROUGH OF ELMWOOD PARK,

     Defendant-Appellant.

_____

Argued October 29, 2024 – Decided January 9, 2025

Before Judges Gilson and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5108-21.

Michael A. Bukosky argued the cause for appellant (Loccke, Correia & Bukosky, LLC, attorneys; Michael A. Bukosky, of counsel and on the briefs).

Adam D. Wolper argued the cause for respondents (Wolper Law Group, LLC, attorneys; Adam D. Wolper, of counsel and on the brief).

PER CURIAM

This appeal arises from a dispute between plaintiffs, four limited liability companies, and defendant, the Borough of Elmwood Park (the Borough), concerning whether two roads were dedicated and accepted as public roads while plaintiffs were developing a property in the Borough. In an action brought in lieu of prerogative writs, the trial court entered an order granting summary judgment to plaintiffs and held that two roads that provide access to plaintiffs' property are public roads that had been dedicated to and accepted by the Borough under N.J.S.A. 40:55D-53(j). The Borough appeals from that order and an amendment to that order. Because the material undisputed facts establish that the two roadways were dedicated to and accepted by the Borough as public roads in accordance with N.J.S.A. 40:55D-53(j), we affirm.

I.

We discern the facts from the summary judgment record. In support of their motion, plaintiffs submitted three certifications and numerous documents supporting their statement of material undisputed facts. The Borough did not submit a certification or other evidence in opposition to plaintiffs' statement. Instead, the Borough submitted "Answers" prepared by its counsel. The Borough's counsel, however, did not certify that he had personal knowledge of

the statements made in the "Answers." Just as importantly, the Borough's "Answers" did not identify evidence disputing plaintiffs' statement of material facts. Accordingly, we derive the material facts from the documents and certifications submitted by plaintiffs.

Plaintiffs are River Drive Development, L.L.C. (RDD), Riverfront Residential 1, LLC (RR1), Riverfront Residential 2, LLC (RR2), and Riverwalk III, LLC (RIII). In 2001, RDD took title to approximately twenty acres of vacant land in the Borough (the Property). The Property is bordered on its northern side by Slater Drive, on its western side by the Passaic River, on its eastern side primarily by River Drive, and on its southern side by Route 46. Over the next twenty years, RDD and various of its affiliates subdivided and developed the Property by building numerous buildings that are used for residential, office, and retail purposes. As part of those improvements, RDD and its affiliates also constructed two roads to access the Property: Riverfront Boulevard (Boulevard R) and Right of Way A (ROW A) (collectively, the Roads).

RDD received its first site plan approval in 2002. In 2004, RDD entered into a developer's agreement with the Borough. Those documents required, among other things, RDD to construct all "streets" in the development "in strict compliance with the rules, regulations, specifications, requirements, and

[o]rdinances of [the Borough]." The 2004 resolution also required RDD to "provide appropriate performance bonds" for each part of its construction.

Between 2006 and 2007, RFC-1, LLC (RFC), an affiliate of RDD, built a three-story office building on one of the lots of the Property. As part of that project, RFC constructed ROW A and part of Boulevard R. RFC also built a driveway off Boulevard R to access an adjoining property that is currently owned and used by a church. In connection with the Roads' construction, RFC provided a performance bond to the Borough. The Borough released that performance bond in 2007, after the completion of the construction.

In 2010, the Borough's planning board issued a resolution granting RR1 final site plan approval to construct a residential apartment building on another lot of the Property. The 2010 resolution required the Roads to be upgraded to the Borough's standards "prior to" the Roads being "dedicated to the Borough." In that regard, the 2010 resolution stated:

> The access road to the premises must be constructed in accordance with Borough standards and . . . [if] the exi[sting] access road is not up to [B]orough standards, the existing access road must be upgraded to Borough standards prior to the same being dedicated to the Borough [] at the cost and expense of the applicant.

In connection with the 2010 resolution, a tax map was filed and recorded (the 2010 Tax Map). The 2010 Tax Map was signed by the chair and secretary

4                                                    A-2604-22

of the Borough's planning board, the Borough's engineer, the Borough's clerk, and a representative of the Bergen County Planning Board.  The 2010 Tax Map depicted Boulevard R and "public" ROW A.  The 2010 Tax Map also included a note stating that an additional thirty-two square feet of Boulevard R was being dedicated as a public right of way.

Thereafter, RR1 entered into a developer's agreement with the Borough. RR1 also posted bonds for its performance of the improvements, which included upgrading and finishing Boulevard R and upgrading ROW A.  In 2012, RR1 completed the construction of the apartment building and the upgrades to the Roads.  The following year, the Borough issued a resolution releasing RR1's performance bonds.

Between 2013 and 2015, another of the lots of the Property was developed with a multi-family apartment building.  As part of that development, the curbing of the Roads was improved.  In 2015, after the construction and improvements were completed, the Borough issued a resolution releasing the related performance bonds.  The 2013 and 2015 resolutions, which released the performance bonds, both stated that the Borough's engineer took no exception to the release of the bonds.

A-2604-22

In 2018, RDD applied for an amended site plan approval to construct four multi-family apartment buildings on another lot of the Property. During an October 2018 hearing on RDD's application, the Borough's planning board questioned whether Boulevard R and ROW A were public roadways. Plaintiffs responded through their counsel and took the position that the Roads had already been dedicated and accepted for public use and, therefore, were public roads under N.J.S.A. 40:55D-53(j).

In connection with the issue of the status of the Roads, in November 2018, Peter C. Ten Kate (Ten Kate) of Boswell Engineering wrote to the planning board's counsel. Ten Kate explained that in 2015, Bowell Engineering had inspected and approved the Roads as compliant with the Borough's standards. Ten Kate also stated that Boswell Engineering had recommended to the Borough's mayor and council that RR2's performance bonds be released. In that regard, Ten Kate wrote:

> Boswell Engineering inspected the construction of the roads of the Riverfront Development to Borough Standards. By virtue of the fact that we recommended to the Mayor and Council that the Performance Guarantees be released in 2015, we found the construction of the roads to be satisfactory and in compliance with Borough Standards.

A-2604-22

Several months later, in January 2019, the planning board issued a resolution approving RDD's amended site plan to develop the multi-family apartment buildings. The 2019 approval resolution stated: "Dedication of Roadways to the Borough [] should be addressed by the Applicant with the Borough, and the Applicant shall be responsible to undertake any additional steps, as may be necessary, for the road dedication."

Thereafter, RDD and the Borough entered into a developer's agreement under which RDD constructed the apartment buildings. The construction included improvements to be made to the Roads. RDD also provided the Borough with performance bonds.

As part of the 2019 approval resolution, RDD and the Borough executed an easement agreement to provide public access to the Passaic River docks. The docks were floating docks on the Passaic River. The easement can only be accessed by traveling on Boulevard R.

In January 2021, RDD's counsel sent a letter to the Borough's counsel requesting the Borough to enter a resolution acknowledging that the Roads had been dedicated to and accepted by the Borough and were public roadways. The Borough did not directly respond to that letter. Instead, on June 17, 2021, the

A-2604-22

Borough issued a resolution rejecting RDD's offer to dedicate the roadways to the Borough as public roadways.

In response to the Borough's resolution, on August 2, 2021, plaintiffs filed a complaint in lieu of prerogative writs. In their complaint, plaintiffs asserted three counts seeking (1) to invalidate the June 2021 resolution and obtain a judgment compelling the Borough to adopt an ordinance formally accepting public dedication of the Roads; (2) remedies for promissory and equitable estoppel; and, alternatively, (3) a judgment declaring the Roads private property belonging to plaintiffs and confirming that plaintiffs could restrict access to the Roads.

Following discovery, plaintiffs moved for summary judgment on counts one and two of their complaint. In support of that motion, plaintiffs submitted three certifications: two from George Siller and one from their counsel. Siller is a member and officer of the companies comprising plaintiffs and he is also a licensed professional engineer. In addition, Siller had helped to oversee the development projects on the Property. Plaintiffs also submitted numerous documents, including an excerpt from the Division of Taxation's "State of New Jersey Tax Maps Regulation and Standards" detailing that private roads must be labeled as "private."

 A-2604-22

In opposing plaintiffs' motion, defendant submitted a certification from its counsel and excerpts from transcripts from two of the planning board meetings held in 2018. As already noted, the Borough's counsel did not certify that he had any personal knowledge of the facts. Nor did the Borough's "Answers" identify evidence rebutting the material facts set forth in plaintiffs' statement.

After hearing oral argument, on April 4, 2023, the trial court issued an order granting plaintiffs' motion for summary judgment on count one of plaintiffs' complaint. In that regard, the court declared Boulevard R and ROW A public roads that had been dedicated and accepted by the Borough as a matter of law. The court then dismissed counts two and three of the complaint as moot.

The trial court supported its ruling with a written decision. Initially, the court conducted a thorough analysis of plaintiffs' statement of material facts and the Borough's answering statement. The trial court then detailed how the Borough's answers failed to dispute the material facts set forth in the documents and evidence submitted by plaintiffs. In short, the trial court rejected defendant's denials of plaintiffs' material facts because they were not supported by any competent evidence.

Turning to the substance of the summary judgment motion, the trial court found that the material facts established that plaintiffs had dedicated the Roads

9

to the Borough in 2010 and thereafter. In that regard, the court found the material facts established that the Borough had understood that plaintiffs had dedicated the Roads for public use. The court also found that Ten Kate, an employee of Boswell Engineering, represented that the Roads had been inspected by an engineer and complied with the Borough's standards. In making that finding, the trial court did not find that Boswell Engineering had been the Borough's engineer in 2013 and 2015. The record, however, established that Boswell Engineering was the Borough's engineer during those years.

Furthermore, based on the inspections and approvals by Boswell Engineering, in 2013 and 2015 the Borough had released the performance bonds related to two of the development projects that were completed between 2012 and 2015. Therefore, the trial court found that the undisputed facts established that the Borough had accepted the Roads as public roads.

In making its legal determinations, the trial court noted that the Borough had not presented any ordinance governing how the Roads should be dedicated. The court, therefore, held that N.J.S.A. 40:55D-53(j) governed the issue. The trial court then applied the undisputed facts and held that the Roads were public roads and had been accepted by the Borough in accordance with N.J.S.A. 40:55D-53(j). The trial court also found that the Borough's 2021 resolution was

10

arbitrary, capricious, and unreasonable because it was not supported by relevant facts.

On April 28, 2023, the trial court issued an amended order appending "Exhibit A," a tax map highlighting the public roads. The Borough now appeals from the April 4, 2023 order and the April 28, 2023 amended order.

II.

On appeal, the Borough raises eight arguments, contending (1) it cannot be compelled to accept dedicated roads; (2) it always reserved the right to decline plaintiffs' dedications; (3) the trial court erred in holding that the Roads had been dedicated and accepted as public roads; (4) each resolution and developer's agreement placed conditions on the Borough's acceptance of the Roads and those conditions were never fulfilled; (5) a proper determination of whether the Roads were accepted as public roads requires an evidentiary hearing; (6) the zoning status of the land under the Roads is not clear and, therefore, precluded summary judgment to plaintiffs; (7) the Roads are really "By-Road[s]"; and (8) plaintiffs should be estopped from denying their obligation to maintain the Roads.

None of defendant's arguments are supported by material facts or law. Instead, most of those arguments are based on factual contentions that are not

supported by competent evidence in the record and legal contentions that are inconsistent with the governing law. Moreover, defendant's eighth argument concerning estoppel was not raised in the trial court and is not properly before us on this appeal. See N. Haledon Fire Co. No. 1 v. Borough of N. Haledon, 425 N.J. Super. 615, 631 (App. Div. 2012) ("An issue not raised [in the trial court] will not be considered for the first time on appeal."); see also Brock v. Pub. Serv. Elec. & Gas Co., 149 N.J. 378, 391-92 (1997) (declining to address an argument because it was raised for the first time on appeal). We therefore focus our analysis on whether the material undisputed facts establish that the Roads were dedicated and accepted as public roads.

A.    Our Standard of Review.

An appellate court reviews a grant of summary judgment de novo, "applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires the appellate court to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be

granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). An appellate court does not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

"Summary judgment requirements . . . are not optional." Kopec v. Moers, 470 N.J. Super. 133, 156 (App. Div. 2022) (omission in original) (quoting Lyons v. Twp. of Wayne, 185 N.J. 426, 435 (2005)). In that regard, a party may not defeat a summary judgment motion through a certification or affidavit by "attorneys of facts not based on their personal knowledge but related to them by and within the primary knowledge of their clients." Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 1:6-6 (2025); Gonzalez v. Ideal Tile Importing Co., 371 N.J. Super. 349, 358 (App. Div. 2004) (citing R. 4:46-5(a)). (explaining that "[e]ven an attorney's sworn statement will have no bearing on a summary judgment motion when the attorney has no personal knowledge of the facts asserted").

B.     The Law Concerning Dedication and Acceptance of Public Roads.

"The process of dedication and acceptance is a method by which property is transferred to a municipality's control." Twp. of White v. Castle Ridge Dev. Corp., 419 N.J. Super. 68, 78 (App. Div. 2011). The actions of a landowner manifesting an intent to dedicate land to a public use is referred to as an "offer of dedication," which is "complete and irrevocable." Twp. of Middletown v. Simon, 193 N.J. 228, 241 (2008); Velasco v. Goldman Builders, Inc., 93 N.J. Super. 123, 137 (App. Div. 1966). Actual dedication, however, is "not consummated until there has been an acceptance." Velasco, 93 N.J. Super. at 137. Under N.J.S.A. 40:55D-53(a) and N.J.S.A. 40:55D-65, a municipality "may adopt an ordinance which establishes a process that a developer must undergo prior to the municipality's acceptance of the road or improvement." White, 419 N.J. Super. at 78. Alternatively, a municipality "may enter into a developer's agreement with a developer which provides for the transfer and dedication to the municipality of a road built for . . . [a] development." Ibid. In that situation, the road "remains the private property of the developer," who continues to bear the responsibility for maintenance, until the municipality formally accepts the dedication. Ibid. "Generally, 'the actual dedication to public use is consummated when the dedication is accepted by an appropriate

14

ordinance or resolution of the municipality.'" N.J. Transit Corp. v. Franco, 447 N.J. Super. 361, 376 (App. Div. 2016) (quoting State v. Birch, 115 N.J. Super. 457, 464 (App. Div. 1971)).

Nevertheless, acceptance of dedication "may also be accomplished by other 'official conduct which manifests an intent to treat the land in question as dedicated to the public use.'" Ibid. (quoting Englander v. Twp. of W. Orange, 224 N.J. Super. 182, 188 (App. Div. 1988)). Accordingly, under N.J.S.A. 40:55D-53(j), a municipality "shall be deemed" to accept dedication of roads for public use when three criteria have been met. N.J.S.A. 40:55D-53(j) states:

> To the extent that any of the improvements have been dedicated to the municipality on the subdivision plat or site plan, the municipal governing body shall be deemed, upon the release of any performance guarantee required pursuant to subsection a. of this section, to accept dedication for public use of streets or roads and any other improvements made thereon according to site plans and subdivision plats approved by the approving authority, provided that such improvements have been inspected and have received final approval by the municipal engineer.

In short, a municipality is deemed to have accepted a developer's dedication of a road when (1) a developer has dedicated the road to the municipality, which was built in accordance with approved site plans; (2) the municipal engineer has inspected and issued final approval of the improvements;

15

and (3) the municipal governing body has released any performance guarantees related to the construction of the road. Ibid. Furthermore, a municipality cannot arbitrarily refuse to accept dedication of roads constructed in conformance with state and local law. See Kligman v. Lautman, 53 N.J. 517, 536 (1969) (explaining that a municipality must accept as public those streets meeting municipal requirements, as shown upon an approved plat plan, when the improvements are completed because of the "benefit of both house purchasers and the developer").

C.    The Application of the Material Undisputed Facts to the Law.

Applying the material undisputed facts to the law establishes that the Roads are public roads under N.J.S.A. 40:55D-53(j). In that regard, the material undisputed facts establish that (1) the Roads were dedicated to the Borough; (2) the Roads were inspected and approved by the Borough's engineer; and (3) the Borough released plaintiffs' performance bonds after the Roads had been constructed and improved.

First, plaintiff dedicated the Roads to the Borough. That dedication was most clearly made in the 2010 resolution approving the construction of apartment buildings and the related 2010 Tax Map. The 2010 approval resolution stated:

> The access road to the premises must be constructed in accordance with Borough standards and . . . the exi[sting] access road must be upgraded to Borough standards prior to the same being dedicated to the Borough of Elmwood Park at the cost and expense of the applicant.

The 2010 Tax Map then depicted the Roads as public roads. ROW A was labeled: "Borough of Elmwood Park Public R.O.W." Boulevard R had a notation stating that "thirty-two [square feet] to be dedicated as [public right of way]."

In addition, nowhere on the current Official Tax Map are the Roads depicted as private roads. The absence of a depiction of the Roads as private is significant. The regulations governing municipal tax maps establish standards for those maps. See N.J.A.C. 18:23A-1.1(a)(4); N.J.A.C. 18:23A-1.15(d). The standards state: "[p]rivate . . . streets shall be shown as lots with separate lot numbers or shall be shown with dashed lines." N.J.A.C. 18:23A-1.15(d) (citing Standards, S1, S11, S26, and S36). The standards also state that private roads shall be expressly labeled as "private." N.J.A.C 18:23A-1.15(d); S36. In contrast, "[a]ll dedicated streets, roads and highways shall be shown by a solid line." N.J.A.C 18:23A-1.15(a). On the current Official Tax Map, Boulevard R and ROW A are both depicted with "solid line[s]" instead of "dashed lines."

17

Thus, Boulevard R and ROW A are depicted as public roads under N.J.A.C. 18:23A-1.15(a).

Second, the Roads were inspected and approved by the Borough's engineer. That fact is confirmed in the Borough's 2013 and 2015 resolutions releasing the performance bonds. Both resolutions stated that Boswell Engineering took "no exception to the release" of the performance bonds. Indeed, Ten Kate of Boswell Engineering later explained:

> Boswell Engineering inspected the construction of the roads of the Riverfront Development to Borough Standards. By virtue of the fact that we recommended to the Mayor and Council that the Performance Guarantees be released in 2015, we found the construction of the roads to be satisfactory and in compliance with Borough Standards.

Third, it is not disputed that the Borough released the performance bonds after the completion of the construction of the Roads. Those facts are confirmed in the Borough's 2013 and 2015 resolutions releasing the performance bonds. In short, the undisputed material facts establish that by 2015, the Borough had accepted the Roads as public roads in accordance with N.J.S.A. 40:55D-53(j).

The Borough's arguments to the contrary are not supported by competent evidence or law. The Borough primarily relies on the fact that it never issued a resolution accepting the Roads as public roads. Municipalities can formally

accept an offer of dedication by ordinance or resolution. See Velasco, 93 N.J. Super. at 137; see also N.J.S.A. 40:67-1(b). Nevertheless, N.J.S.A. 40:55D-53(j) makes clear that a municipality "shall be deemed" to have "accept[ed]" dedication of a road when the criteria of that statute has been met. As we have already detailed, the three criteria of N.J.S.A. 40:55D-53(j) were established by the material undisputed facts in the record.

The Borough's numerous arguments challenging the trial court's grant of summary judgment to plaintiffs lack sufficient merit to warrant further discussion in a written opinion. See R. 2:11-3(e)(1)(E). We do, however, make one overview comment. The summary judgment record established that plaintiffs and the Borough had a consistent course of dealing between 2002 and 2019. Plaintiffs consistently proposed developments on the Property that reflected that the Roads would be dedicated to the Borough as public roads. The Borough acted consistently as though it had accepted the dedication of the Roads. It was only in 2018 that the Borough first raised a question about the status of the Roads. Moreover, it was not until June of 2021 that the Borough attempted to take formal action to decline the dedication of the Roads. As we have detailed, the June 2021 resolution was arbitrary, capricious, and unreasonable because the Borough had already been deemed to have accepted

the Roads as public roads under N.J.S.A. 40:55D-53(j).  Consequently, we affirm both the April 4, 2023, and the amended April 28, 2023 orders.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2604-22